UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JAMES M. JORDAN and NANCY L. JORDAN,<br><br>Plaintiffs,<br>v.<br><br>BANK OF AMERICA and RECONTRUST,<br><br>Defendants. | Case No. 3:13-cv-00058-MMD-WGC<br><br>ORDER<br><br>(Defs.' Motion to Dismiss – dkt. no. 4) |

I. **SUMMARY**

Before the Court is Defendants Bank of America, N.A. ("BANA") and ReconTrust Company, N.A.'s ("ReconTrust") Motion to Dismiss. (Dkt. no. 4.) For the reasons set forth below, the Motion is granted.

II. **BACKGROUND**

A. **Factual Background**

Plaintiffs James M. Jordan and Nancy L. Jordan purchased real property located at 3042 Mckall Circle, Elko, Nevada (the "Property") on or about July 8, 2008. (Dkt. no. 1-1 ¶ 2.) To finance the purchase of the Property, Plaintiffs obtained a loan from Countrywide in the amount of $353,400.00, which was secured by a Deed of Trust. (Id.; dkt. no. 4-2.)[1] The Deed of Trust names Countrywide Bank, FSB as lender, Stewart Title

---

[1] Defendants have requested that the Court take judicial notice of attached copies of relevant publicly recorded documents. The Court takes judicial notice of these public records. See Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (explaining the court may take judicial notice of the records of state agencies and other undisputed matters of public record under Fed. R. Evid. 201).

of Nevada Holding, Inc. as trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee and beneficiary. (Dkt. no. 4-2 at 1.)

On April 5, 2010, MERS assigned its beneficial interest in the Deed of Trust to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP. (Dkt. no. 4-3.) The same day, BAC Home Loans Servicing substituted ReconTrust as the trustee. (Dkt. no. 4-4.)

Plaintiffs defaulted on the loan secured by the Deed of Trust by failing to make the payment due on December 1, 2009. (Dkt. no. 4-5.) Plaintiffs claim that they purposely missed three mortgage payments in order to qualify for a loan modification, which they had not qualified for while current. (Dkt. no. 1-1 ¶¶ 13–17.) The terms of the loan require a payment of $2,710.68 per month. (Id. ¶ 9.) They state that they were told by a Bank of America representative that the bank could not help Plaintiffs with a loan modification unless Plaintiffs missed three payments. (Id. ¶ 15.) Because Plaintiffs then missed payments, ReconTrust, as duly substituted trustee, executed and recorded a notice of default on April 5, 2010. (Dkt. no. 4-5.) The foreclosure sale was scheduled for October 7, 2010. (Dkt no. 18 ¶ 29.)

Plaintiffs engaged in a negotiation with Bank of America to avoid foreclosure. On September 20, 2010, Plaintiffs were informed by a Bank of America employee that the foreclosure would not be stopped unless Plaintiffs provided the "full reinstatement amount." (Dkt. no. 18 ¶ 30.) On September 27, 2010, they spoke with a Bank of America foreclosure department representative, Ms. Whitaker, who informed Plaintiffs that they owed approximately $32,000.[2] (Id. ¶ 36.) Plaintiffs claim they asked Ms. Whitaker if sending $22,000 would stop the foreclosure and Ms. Whitaker responded that such a payment would be accepted as a "'good faith offer' and would stop the auction." (Dkt no. 1-1 ¶ 38.) Plaintiffs assert that Ms. Whitaker also stated that Plaintiffs should not worry

---

[2] Plaintiffs simultaneously state that they missed three payments and that their reinstatement amount was $32,000. The Court notes this unexplained discrepancy but accepts as true both statements for the purposes of a motion to dismiss.

2

about foreclosure and that she had "never seen a borrower send that much money and then be foreclosed on."

However, Plaintiffs allege that on October 6, 2010, the day before the scheduled auction, Ms. Whitaker called Plaintiffs to inform them that their offer of $22,000 was rejected and that they would need to pay an additional $10,037 or the house would be foreclosed on. (*Id.* ¶ 44.) Plaintiffs wired the money and on October 7, 2010, ReconTrust canceled the foreclosure. (*Id.* ¶¶ 45, 55.)

ReconTrust rescinded the Notice of Default in October 2010, recorded on October 14, 2010. (Dkt. no. 4-6.) The parties agree that the Property has not been foreclosed upon.

Throughout the Complaint Plaintiffs recount a long and frustrating series of communications with BANA in which representatives provided contradictory pieces of information about the status of Plaintiffs' loan. They also state that BANA has failed to provide adequate documentation of Plaintiffs' payment history.

### B.   Procedural History

Plaintiffs commenced an action in the Fourth Judicial District Court of the State of Nevada against BANA and ReconTrust and Defendants timely removed the action. (Dkt. no. 1.) Plaintiffs bring six causes of action: (1) breach of express contract; (2) breach of good faith and fair dealing; (3) tortious breach of good faith and fair dealing/bad faith; (4) misrepresentation; (5) negligent misrepresentation; (6) wrongful foreclosure/breach of Chapter 107. (Dkt. no. 1-1.)  Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### III.   LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and

1  conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v.*
2  *Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
3  "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550
4  U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient
5  factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at
6  678 (internal citation omitted).

7      In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to
8  apply when considering motions to dismiss. First, a district court must accept as true all
9  well-pled factual allegations in the complaint; however, legal conclusions are not entitled
10 to the assumption of truth. *Id.* at 679.  Mere recitals of the elements of a cause of action,
11 supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district
12 court must consider whether the factual allegations in the complaint allege a plausible
13 claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint
14 alleges facts that allow a court to draw a reasonable inference that the defendant is
15 liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the
16 court to infer more than the mere possibility of misconduct, the complaint has "alleged –
17 but not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks
18 omitted). When the claims in a complaint have not crossed the line from conceivable to
19 plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

20     A complaint must contain either direct or inferential allegations concerning "all the
21 material elements necessary to sustain recovery under *some* viable legal theory."
22 *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,
23 1106 (7th Cir. 1989) (emphasis in original)).

24 **IV.   DISCUSSION**

25     **A.   Breach of Contract**

26     "A plaintiff in a breach of contract action must show (1) the existence of a valid
27 contract, (2) a breach by the defendant, and (3) damage as a result of the breach."
28 *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008) (citations

4

and quotation marks omitted). A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty. Restatement (Second) of Contracts § 1 (1981). A contract must include the following elements: "intent, offer, acceptance, consideration, mutuality of agreement and obligation." *Matter of Estate of Kern*, 107 Nev. 988, 994 (Nev. 1991).

Plaintiffs allege in their Complaint that there was an "express contractual relationship" between the parties "not to foreclose on Plaintiff's home." (*See* dkt. 1-1 ¶ 104.) They state that Defendants breached the contract by refusing to "fulfill its obligations, including but not limited to its failure and refusal to not foreclose on the subject property."[3] (Dkt. no. 1-1 ¶ 107.)

As an initial matter, Plaintiffs do not make clear which agreement they are alleging is a contract that Defendants breached. However, "[a] document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). The Court will therefore consider two potential agreements implied from the pleading.

The only written agreement submitted to the Court is the Deed of Trust. Plaintiffs cannot succeed on their breach of contract claim if the contract at issue is the loan documents (i.e., Promissory Note and Deed of Trust). The Deed of Trust specifically provides for foreclosure in the event of default and the failure to cure. (Dkt. no. 4-2 at 13.) Plaintiffs admit that they missed three mortgage payments (dkt. no. 1-1 ¶¶ 13–17) and Defendants have provided the Notice of Default recorded prior to the scheduled auction. Once Plaintiffs cured the default by paying the approximately $32,000 owed, the house, by Plaintiffs own admission, was removed from auction.

///

---

[3] In their Opposition brief, Plaintiffs claim that Defendants breached because they "did not remove plaintiffs' house from the auction on October 7, 2010, as promised." (Dkt. no. 12 at 17.) However, this is contrary to the allegations in their Complaint that Defendants cancelled the October 7 foreclosure sale after receiving additional payment. (Dkt. no. 1-1 ¶¶ 45, 55, 56).

In the alternative, Plaintiffs may be arguing that a contract was formed through Plaintiffs' conversation with Ms. Whitaker regarding the payment amount necessary to stop the foreclosure sale scheduled in October 2010, in which Plaintiffs were initially informed that $22,000 was sufficient and then this amount was later increased to $32,000. First, Plaintiffs have not pled the existence of such an oral contract with sufficient specificity. The Complaint simply states that there was an express contractual relationship "not to foreclose on Plaintiff's home." Moreover, Plaintiffs cannot establish that the agreement not to foreclosure was supported by sufficient consideration. *See Nurczewska v. Fed. Home Loan Mortg. Corp.*, No. 12-55309, 2013 WL 2687379, at *1 (9th Cir. June 5, 2013). Plaintiffs already owed the amounts that they eventually paid to stop the foreclosure pursuant to the Promissory Note and Deed of Trust. They do not dispute that the amount they paid was the amount needed to cure the default pursuant to their contractual obligations under the Note and Deed of Trust. While the process was no doubt frustrating, by making the payment to stop the foreclosure, Plaintiffs were not undertaking any action that they were not otherwise required to perform and thus the payment is not consideration for a contract not to foreclose. *See Cnty. of Clark v. Bonanza No. 1*, 615 P.2d 939, 944 (Nev. 1980) ("Consideration is not adequate when it is a mere promise to perform that which the promisor is already bound to do."); *see also Ramanathan v. Saxon Mortg. Servs., Inc.*, No. 2:10-02061, 2011 WL 6751373, at *3 (D. Nev. Dec. 21, 2011) ("It is axiomatic that giving a party something to which he has an indisputable right is not consideration.") (*citing U.S. ex rel Youngstown Welding & Eng'g Co. v. Travelers Indem. Co.*, 802 F.2d 1164, 1169 (9th Cir. 1986)).

Plaintiffs' allegations do not show that a contract was established to modify their payments to stop the October 2010 foreclosure. To the extent Plaintiffs rely on loan documents as the contract upon which they base their claim, Plaintiffs cannot demonstrate that this contract was breached.

///

///

### B.    Breach of Good Faith and Fair Dealing

Nevada recognizes the existence of an implied covenant of good faith and fair dealing in every contract. *Pemberton v. Farmers Ins. Exchange*, 848 P.2d 380, 382 (Nev. 1993). The law in Nevada is that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *A.C. Shaw Constr., Inc. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (*quoting* Restatement (Second) of Contracts § 205). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991). To succeed on a cause of action for breach of the covenant of good faith and fair dealing, a plaintiff must therefore show: (1) the plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Id.*; *see also Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

Plaintiffs contend that the parties entered into "express and implied contractual relationships" and that Defendants violated the covenant of good faith and fair dealing on at least eight occasions. (Dkt. no. 1-1 ¶¶ 111-12.) These occasions are derived from events that Plaintiffs identify as steps towards wrongful foreclosure and refusal to provide loan modification. In their Opposition, Plaintiffs focus on their conversation with Ms. Whitaker about removing the house from auction and a potential loan modification. (Dkt. no. 12 at 19.)

Any alleged breaches of good faith and fair dealing as they relate to the Note and Deed of Trust must fail because, as discussed above, the steps Defendant took towards foreclosure were explicitly within the scope of the contract. Plaintiffs have admitted that they missed at least three payments and the Deed of Trust states that foreclosure proceedings may commence if Plaintiffs default. After Plaintiffs paid Defendants the

missing funds, the Property was removed from auction and the house was not foreclosed on.

Plaintiffs have failed to connect all other alleged breaches of good faith and fair dealing outlined in the Complaint to a viable contract. As explained above, Plaintiffs have not adequately pled that their conversation with Ms. Whitaker regarding the pending auction or loan modification was a binding contract and therefore they cannot succeed on this claim. See *Wensley v. First Nat. Bank of Nevada*, 874 F. Supp. 2d 957, 964 (D. Nev. 2012).

This claim is dismissed against all Defendants.

### C. Tortious Breach of Good Faith and Fair Dealing/Bad Faith

In order to maintain a tort-based claim for breach of an implied covenant, there must be a special relationship between the tort-victim and the tortfeasor, especially where the "the party in the superior or entrusted position has engaged in grievous and perfidious misconduct." *State, Univ. and Cmty. Coll. Sys. V. Sutton*, 103 P.3d 8, 19 (Nev. 2004) (internal quotations and citations omitted); *A.C. Shaw Const., Inc.*, 784 P.2d at 10 (special relationship required for tort-based claim but not for contract-based claim).

Plaintiffs have not demonstrated the existence of a special relationship. Generally, a lender, or an assignee of an original lender, does not owe a borrower a fiduciary duty. See *Yerington Ford, Inc. v. General Motors Acceptance Corp.*, 359 F. Supp. 2d 1075, 1092 (D. Nev. 2004). Trustees likewise do not have a special relationship with borrowers and owe no duty beyond those imposed by the deed of trust and the Nevada foreclosure statutes. See *Rutherford v. Integrity 1st Fin. Grp.*, No. 3:12-cv-19, 2012 WL 3205851, at *5 (D. Nev. Aug. 3, 2012). Plaintiffs have pled no special circumstances in this case in support of their claim that such a relationship existed. Absent a duty, there can be no breach. See *A.C. Shaw Const., Inc.*, 784 P.2d at 10.

### D. Misrepresentation

A claim of fraud requires the plaintiff to establish each of the following elements: (1) a false representation; (2) knowledge or belief that the representation was false (or

knowledge that the defendant's basis for making the representation was insufficient); (3) intent to induce the plaintiff to consent to the contract's formation; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting from such reliance. *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004). Fed. R. Civ. P. 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." To satisfy this standard, a plaintiff must plead "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (*quoting Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).

Plaintiffs claim that "[i]n the Spring of 2009, through its lawful representatives in written communications and telephone, BOA represented to Plaintiff [that if Plaintiff] made one payment, it would be considered good faith, and that BOA would not go forward with the foreclosure and would permanently modify the terms and conditions of repayment thereafter." (Dkt. no. 1-1 ¶ 124.) Plaintiffs further allege that BANA required Plaintiffs to make another $10,000 payment to stop the foreclosure. (*Id.* ¶ 125.)

Plaintiffs have not pled this claim with the particularity required for a misrepresentation claim. They have not stated which written and telephone conversations they believe constitute a misrepresentation, with which Bank of America representatives they conversed, and when these conversations occurred. Plaintiffs discuss a number of conversations throughout the Complaint but do not identify in claim four which of these they believe constitute misrepresentation. Additionally, of these numerous conversations, not one occurred in spring 2009.

Assuming that Plaintiffs intended to reference their phone conversation in fall 2010 with Ms. Whitaker, they have failed to plead all of the necessary requirements of a misrepresentation claim. Plaintiffs allege that Ms. Whitaker stated that a payment of $22,000 would stop the foreclosure but then subsequently stated that Bank of America required an additional $10,037. Even if the Court were to find that this was a

misrepresentation that was fraudulently made, Plaintiffs have not adequately alleged the remaining elements of the claim. Plaintiffs do not allege that Defendants intended to induce Plaintiffs into the agreement to pay $22,000, an offer Plaintiffs originally made. They also fail to allege reasonable reliance, a point which may otherwise be undermined by the fact that a different Bank of America representative had told Plaintiffs a week previously that they would need to pay the full reinstatement amount.

Regarding a loan modification, Plaintiffs cannot demonstrate misrepresentation because they have failed to adequately plead that Defendants promised to modify their loan. Plaintiffs state that Defendants told them in December 2009 that they did not qualify for a home loan modification and that they would only be able to help if Plaintiffs missed three mortgage payments. (Dkt. no. 1-1 ¶¶ 13–16.) Plaintiffs contend that as a result of this conversation, they purposely missed three mortgage payments. (*Id.* ¶ 17.) Defendants' statement, taken as true for the purpose of the complaint, cannot be construed as a representation that they would "permanently modify the terms and conditions of repayment."

Finally, even if Defendants' statement is construed as a promise to modify the loan, such a statement cannot be construed as a misrepresentation as Plaintiffs admit that they were offered a loan modification. (*Id.* ¶ 20.) The fact that Plaintiffs were disappointed by the modification does not demonstrate that Defendants made a false representation as they do not allege in the Complaint that Defendants made a representation about what the modification would entail.

These claims are therefore dismissed against all Defendants.

### E.  Negligent Misrepresentation

The Nevada Supreme Court has adopted the following definition of negligent misrepresentation from the Restatement (Second) of Torts § 552:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance

> upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998). Reliance is required to prevail on a claim for negligent misrepresentation. *Bill Stremmel Mtrs. v. First Nat'l Bank*, 575 P.2d 938, 940 (Nev. 1978).

Plaintiffs' negligent misrepresentation claim is vulnerable to the same problems with particularity described in the Court's analysis of the misrepresentation claim. *See supra* Part IV.D. Additionally, Plaintiffs have not pled the existence of a duty of care and, as described above, lenders and trustees do not typically have a fiduciary duty to a borrower. *See supra* Part IV.C.

### F. Wrongful Foreclosure/Breach of Chapter 107

Under Nevada law, to succeed on a claim of wrongful foreclosure a plaintiff must show that a lender wrongfully exercised the power of sale and foreclosed upon his or her property when the homeowner was not in default on the mortgage loan. *See Collins v. Union Federal Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev.1983). The parties agree that the house was not foreclosed upon. Accordingly, this claim is dismissed against all Defendants.

### V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Defendants' Motion to Dismiss (dkt. no. 4) is granted. Dismissal of Plaintiffs' claims is without prejudice.

DATED THIS 19th day of September 2013.

---
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE